IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| WILLIE C. WILLIAMS, | : |
| Plaintiff, | : |
| VS. | : |
| | : 7 : 10-CV-84 (HL) |
| MICHAEL J. ASTRUE, | : |
| Commissioner of Social Security, | : |
| Defendant. | : |

## RECOMMENDATION

The Plaintiff herein filed this Social Security appeal on August 24, 2010 challenging the Commissioner's final decision denying his application for disability benefits, finding him not disabled within the meaning of the Social Security Act and Regulations.  Jurisdiction arises under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c).  All administrative remedies have been exhausted.

## LEGAL STANDARDS

In reviewing the final decision of the Commissioner, this Court must evaluate both whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner applied the correct legal standards to the evidence.  *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's factual findings are deemed conclusive if supported by substantial evidence, defined as more than a scintilla, such that a reasonable person would accept the evidence as adequate to support the conclusion at issue.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)*; Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).  In reviewing the ALJ's decision for support by substantial evidence, this Court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  "Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial

evidence." *Bloodsworth*, 703 F.2d at 1239. "In contrast, the [Commissioner's] conclusions of law are not presumed valid. . . . The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius*, 936 F.2d at 1145-1146.

### *Administrative Proceedings*

The Plaintiff filed an application for supplemental security income on October 23, 2007. (T- 63). His claim was denied initially and upon reconsideration. (T- 63-71). A hearing was held in Thomasville, Georgia on September 8, 2009, presided over remotely by an ALJ in Savannah, Georgia. (T- 54-62). Thereafter, in a hearing decision dated November 16, 2009, the ALJ determined that the Plaintiff was not disabled. (T- 9-25). The Appeals Council subsequently denied review and the ALJ's decision thereby became the final decision of the Commissioner. (T- 2-4).

### *Statement of Facts and Evidence*

The Plaintiff was forty (40) years of age at the time of the ALJ's decision, and alleged disability since October 23, 2007, due to mental problems, diabetes, leg problems, headaches, and blood clots in the legs. (T- 64). He completed the tenth grade and has past relevant work experience as a cook, laborer, and security guard. (T- 23). As determined by the ALJ, Plaintiff suffers from a severe impairment in the form of borderline-to-mild mental retardation range of intellectual ability. (T-11). The ALJ found that the Plaintiff did not have an impairment or combination thereof that met or medically equaled a listed impairment, and remained capable of performing a full range of work at all exertional levels. (T - 19). The ALJ found that the Plaintiff could return to any of his past relevant work, and was not disabled. (T- 23-25).

## DISCUSSION

The Plaintiff asserts that the ALJ erred in failing to properly credit the opinions of physicians

Vandewalle, Willers, and Wager, and erred in crediting the opinions of one-time consultative examiner Garmon. The Plaintiff further maintains that the ALJ erred in failing to find that his mental impairments met or equaled Listing 12.05C.

*Physicians' opinions*

Pursuant to 20 C.F.R. § 404.1527(e)(2), the Commissioner will "consider opinions from treating and examining sources on issues such as . . . your residual functional capacity . . . [although] the final responsibility for deciding these issues is reserved to the Commissioner." "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." 20 C.F.R. § 404.1527(e)(1). Good cause to discount the opinion of a physician has been found to exist "where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. We have also found good cause where the doctors' opinions were conclusory or inconsistent with their own medical records." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (internal citations omitted); *see also Winschel v. v. Comm'r. of Social Security*, 631 F.3d 1176, 1178-79 (11th Cir. 2011). As the *Lewis* court noted, "[w]e are concerned here with the doctors' evaluations of [the plaintiff's] condition and the medical consequences thereof, not their opinions of the legal consequences of [her] condition." *Lewis*, 125 F.3d at 1440.

"Absent 'good cause', an ALJ is to give the medical opinions of treating physicians 'substantial or considerable weight'. . . With good cause, an ALJ may disregard a treating physician's opinion, but he 'must clearly articulate [the] reasons' for doing so." *Winschel*, 631 F.3d at 1179 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004)).

The Plaintiff asserts that the ALJ ignored limitations issued by treating psychiatrist Dr. Vandewalle and supported by conclusions reached by Drs. Wager and Willers. The Plaintiff maintains that it was error for the ALJ to then instead rely on the opinions and findings of one-time consultative examiner Dr.

3

Garmon.

Plaintiff began treatment at Georgia Pines Mental Health Services in June 2008, seeking treatment for memory loss, mood swings and fear of being alone. (T – 302, 325). Plaintiff reported hearing voices and experiencing hallucinations at his initial evaluation. (T – 321). In initial treatment notes, a mental health counselor noted that Plaintiff was "very vague in descriptions" regarding his hallucinations and that the intake assessor suspected "malingering for disability benefits". (T – 319). In subsequent treatment visits, the Plaintiff continued to report hearing voices and experiencing hallucinations and was treated with medications accordingly. (T – 310-318). In July 2009, Dr. Vandewalle completed a Psychiatric Review Technique form and opined that the Plaintiff suffered from schizophrenic disorder, affective disorder and mental retardation, with marked restrictions in activities of daily living, social functioning, and maintaining concentration, persistence, or pace. (T – 296, 300). In providing consultant's notes in support of Dr. Vandewalle's findings and based on Plaintiff's treatment at Georgia Pines, Dr. Michael Wager opined that Plaintiff "functions with very limited cognition and experiences a psychotic disorder . . . He is not able to learn new tasks other than very concrete repetitious ones and his memory is so suspect that he would most likely have to be retrained almost every day. As such, it is felt that he cannot function at any type of employment situation and therefore should be considered totally disabled." (T – 303).

Dr. Joe Garmon performed a consultative psychological evaluation of the Plaintiff on March 19, 2008, and concluded that it was "difficult to determine whether there are psychiatric problems because [Plaintiff] was unwilling or unable to respond." (T – 246). Dr. Garmon suspected that Plaintiff was malingering based on test results and observations, and considered it highly unlikely that "something psychotic is happening". *Id.* Prognosis for recovery was assessed as "fair" based on Plaintiff's current functioning. *Id.*

Dr. Karl Willers performed a consultative psychological examination of the Plaintiff on October 28, 2008, and concluded that Plaintiff "is not malingering.  This is a consistently very low-functioning man, with some possible psychiatric disorders. . . It is hard to imagine how he could participate in any aspect of the work force, even low-skilled labor at this time."   (T – 278).

The ALJ reviewed the findings of Dr. Vandewalle, Dr. Garmon, and Dr. Willers, and found that:

> [d]espite claimant's reports in February 2009 of a decrease in his hallucinations, Dr. Vandewalle continued to assign a GAF of 50.   Dr. Vandewalle's [sic] now suggesting schizophrenia and affective disorders in July 2009 disability claim forms appears to be based on Dr. Willers' opinion, as there are no documented findings of these disorders in his treatment notes.   Dr. Vandewalle also admitted that the prescribed neuroleptic medication had decreased claimant's psychotic symptoms and additional antipsychotic medication might be indicated in the future to achieve <u>complete stabilization</u>.   Thus, with continued treatment with medications   -- apparently not counseling – the claimant's prognosis appears good.   Other statements by Dr. Vandewalle are direct quotes from Dr. Willers' report (e.g., great difficulty articulating his needs and concerns to others, and has few resources for rational problem-solving) and do not appear in Dr. Vandewalle's treatment notes.   This doctor also noted claimant's past employment as a bouncer and possibly as a dishwasher but failed to note, as did Dr. Willers, claimant's admitted work as a laborer at a meat packing plant, which included work around hazardous machinery, for several years for substantial earnings.   It appears the treating doctor was unaware of claimant's primary past job as a laborer.
>
> The consideration of any psychotic disorder appears to have been based solely on claimant's reported hallucinations (which are not corroborated by third party report or clinical findings by both consultative psychologists) being taken at face value and <u>not</u> on any evidence of psychosis documented as observed during mental status exam by Dr. Vandewalle or any of the other examining mental health professionals at GA Pines.
>
>  . . .
>
> Claimant was seen by Dr. Vandewalle only on 4 occasions in September and November, 2008 and February and May, 2009; and, on July 9, 2009. In the medical source statement and PRTF, Dr. Vandewalle presented the claimant's current mental status, impairment, and level of mental functioning as much more severe and limited than documented in his treatment notes. . . There is no documented evidence that the claimant was undergoing psychological counseling to any significant extent, which would seem inconsistent with customary treatment for individuals with

>symptoms as serious as suggested in Dr. Vandewalle's PRTF and medical source statement and the assigned GAF of 50.   Claimant's treatment was initiated based on claimant's allegations of hallucinations that were considered questionable from the very beginning at GA Pines – consistent with the lack of evidence of psychosis in thorough psychological examinations by Drs. Garmon and Willers.

(T – 21-22).

A review of the entire objective medical record and the ALJ's decision reveals that the ALJ's rejection of Dr. Vandewalle's findings, as supported by Dr. Wager and Dr. Willers, was not supported by substantial evidence.   The ALJ attempted to discredit the opinions of Dr. Vandewalle, a treating physician, based on findings that Dr. Vandewalle's conclusions were not bolstered by the evidence and were inconsistent with his own treatment notes.   However, the medical record, and specifically Dr. Vandewalle's treatment notes, reveal that the Plaintiff was diagnosed with and treated for psychosis beginning in June 2008 and continuing through May 2009, with consistent findings that Plaintiff suffered hallucinations.   To the extent that the Commissioner considers Plaintiff's reports of hallucinations uncorroborated inasmuch as the record does not contain additional outside sources that witnessed or discussed Plaintiff's hallucinations, such lack of additional witnesses does not undermine Dr. Vandewalle's, the treating physician's, apparent decision to credit Plaintiff's reports and prescribe medication accordingly.   The Court notes as well that:

>a psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as a medical impairment . . . When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology.   The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation.

*Poulin v. Bowen*, 817 F.2d 865, 873-874 (D.C. Cir. 1987) (citations omitted).

The Court notes that contrary to the ALJ's conclusions that the consultative examiners found no

evidence of psychosis, Dr. Willers found that Plaintiff <u>possibly</u> suffered from psychiatric disorders, and Dr. Garmon found that Plaintiff's inability or refusal to answer questions made it difficult to determine whether he had psychiatric problems, noting only that psychosis was "unlikely".  (T – 278, 246).

Moreover, the ALJ rests a significant portion of the discrediting of Dr. Vandewalle's findings on his own disagreement with Dr. Vandewalle's conclusions and diagnosis, rather than any specific conflict in the medical record that actually undermines Dr. Vandewalle's diagnosis.  Prior to evaluating Dr. Vandewalle's opinion, the ALJ had already set forth the medical evidence and concluded that "[t]here is no convincing clinical evidence that the claimant, in fact, has a psychotic disorder."  (T – 18).  The ALJ continued to step into the role of a physician and assess the strengths of Dr. Vandewalle's medical conclusions.  Such a disagreement between the ALJ and the treating physician, by itself, cannot provide good cause to disregard the treating physician's opinions.  *Hillsman v. Bowen*, 804 F.2d 1179, 1182 (11th Cir. 1986) (ALJ rejected the opinions of treating physicians "because ALJ himself reached a different conclusion after viewing the medical records.  Such circumstantial evidence cannot alone support a finding of a nonsevere disability in the face of an opposing conclusion by the treating physician").

Having failed to properly discount the opinion of Plaintiff's treating physician, the ALJ's subsequent reliance on the opinion of non-disability issued by consultative examiner Dr. Garmon and consultative non-examining physician Dr. O'Neill was improper.  (*Forrester v. Comm'r. of Social Security*, 2012 WL 45446, *1 (11th Cir.) ("The opinions of non-examining, non-reviewing physicians, are entitled to little weight when contrary to those of an examining physician, and, taken alone, they do not constitute substantial evidence.").)

*Listing 12.05C* (*20 C.F.R. Ch. III, Pt. 404, Subpt. P, App. 1*)

The Plaintiff also maintains that the ALJ erred in failing to find that his impairment met or equaled Listing 12.05C.  Listing 12.05, entitled "Mental retardation", provides that "[m]ental

7

retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." Part C of this listing dictates a finding of disability when a claimant has "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function". Therefore, "[t]o be considered for disability benefits under section 12.05, a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22." *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).

In order to establish that his impairments meet or equal one or more of those set out in the List of Impairments (Appendix 1, 20 C.F.R. Part 404), a claimant must present specific medical findings that meet the tests for the applicable impairment or medical evidence that demonstrates how the impairment is equivalent to the listings. *Bell v. Bowen*, 796 F.2d 1350, 1353 (11th Cir. 1986) (plaintiff must "present specific medical findings that meet the various tests listed under the description of the applicable impairment or, if in the alternative he contends that he has an impairment which is equal to one of the listed impairments, the claimant must present medical evidence which describes how the impairment has such an equivalency"); *Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

"[A] claimant meets the criteria for presumptive disability under Listing 12.05(C) when the claimant presents a valid I.Q. score of 60 to 70 and evidence of additional mental or physical impairment." *Hodges v. Barnhart*, 276 F.3d 1265, 1268 (11th Cir. 2001). However, this presumption

can be overcome by evidence of Plaintiff's education, work history, and daily activities. *Id.* The Plaintiff argues that he has established presumptive disability based on his IQ scores and other impairment in the form of psychosis.

The ALJ found that the Plaintiff's condition did not meet or equal Listing 12.05C, based primarily on the ALJ's conclusion that the Plaintiff did not suffer from any impairment other than borderline to mild mental retardation intellectual functioning.  (T – 18).   However, to the extent that the ALJ improperly discounted the opinions of disability issued by Dr. Vandewalle, who diagnosed Plaintiff as suffering from psychosis, and the opinion issued by Dr. Willers that the Plaintiff possibly suffers additional psychiatric impairment, the ALJ's decision regarding Listing 12.05C is not supported by substantial evidence.   This issue must be reexamined upon remand.

*Conclusion*

Inasmuch as the Commissioner's final decision in this matter is not supported by substantial evidence, it is the recommendation of the undersigned that the Commissioner's decision be **REVERSED AND REMANDED** pursuant to Sentence Four of § 405(g) for further consideration.   Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable Hugh Lawson, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of this Recommendation.

**SO RECOMMENDED**, this 3rd day of February, 2012.

    **S/   *THOMAS Q. LANGSTAFF***
    **UNITED STATES MAGISTRATE JUDGE**

asb

10